UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| GARY McCANN, ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | Case No. 08-CV-2151 |
| ) | |
| ILLINOIS CENTRAL RAILROAD ) | |
| COMPANY, ) | |
| ) | |
| **Defendant.** ) | |

## OPINION

This case is before the court for ruling on various pending motions filed by Plaintiff, Gary McCann, and Defendant, Illinois Central Railroad Company. This court has carefully considered the arguments of the parties and the documents filed. Following this careful and thorough consideration, this court rules as follows: (1) Defendant's Motion to Bar Plaintiff's Treating Physicians from Giving Expert Causation Opinions and to Bar the Expert Opinions of Tyler Kress (#26) is GRANTED; (2) Defendant's Motion for Summary Judgment (#28) is GRANTED; (3) Defendant's Motion for Leave to Supplement Motion to Bar (#42) is GRANTED; and (4) Plaintiff's Motion for Leave to File Supplement to Plaintiff's Response (#43) is DENIED. Based upon these rulings, Defendant's Motion in Limine (#48) is MOOT.

## FACTS[1]

Plaintiff was hired by Defendant in October 1967. Plaintiff left in December 1967 for military service and returned in 1970. Plaintiff worked in the maintenance of way department and

---

[1] The facts recited are taken from Defendant's Statement of Undisputed Facts and Plaintiff's Response to the Undisputed Facts, as well as the documents the parties have provided to this court, including deposition transcripts. This court notes, however, that it has only considered depositions taken in this case and has not considered depositions taken in other, unrelated cases. See Fed. R. Civ. P. 32(a)(8) (deposition taken in earlier action may only be used "in a later action involving the same subject matter between the same parties").

then worked as a switchman and brakeman. In 1988, Plaintiff became an engineer. Plaintiff testified that he almost always worked "locals" as an engineer. Plaintiff last worked for Defendant on November 27, 2005. Plaintiff testified that he stopped working because of his shoulder pain. Plaintiff testified that his shoulder injury was an old injury which was not work related. When Plaintiff talked to the trainmaster, Kelly Clough, he told Clough he could not work anymore because of his left shoulder. He told Clough that it was not work related. Plaintiff never submitted a claim stating that his injuries were work related. Plaintiff signed a form dated November 28, 2005, stating his condition was not work related. At his deposition, Plaintiff testified that he is only claiming that injuries to his cervical spine (neck) and his carpal tunnel syndrome were caused by his work for Defendant. Plaintiff testified that he believed the railroad was a reasonably safe place to work but could have had better seats, better track and better engines.

   Plaintiff testified that the first time he remembered having any kind of pain or problems with his neck was in July 2002 from riding his motorcycle. Plaintiff testified that he could not recall any other activity or event that caused his neck pain and that he did not have any specific accident or injury to his neck at work. Plaintiff testified that riding his motorcycle aggravated his shoulder and neck pain. Plaintiff also testified that he had a motorcycle accident in August 2002. In the accident, he broke and dislocated his right ankle and broke his left wrist. Plaintiff testified that his wrist injury required two different surgeries to his left wrist. Plaintiff testified that he had experienced numbness and tingling in his fingers from riding a motorcycle. Plaintiff said his hands did not tingle any other time. Plaintiff testified that he put 25,000 miles on a Honda VTX motorcycle between 2002 and 2006 and rode his motorcycle to California and back in 2003. He testified that, before that, he owned a Honda 750 which he rode for five or six thousand miles. Plaintiff testified that he last rode his motorcycle in 2006.

Plaintiff saw Dr. George Schoedinger for the first time on February 16, 2006. Plaintiff testified that Dr. Schoedinger told him his neck pain was not related to the problem with his shoulder and was a repetitive-type injury from working as an engineer. Plaintiff testified that he last saw Dr. Schoedinger on April 3, 2006. The only treatment Dr. Schoedinger recommended for Plaintiff was that he quit smoking and lose weight. Plaintiff testified that Dr. Dove tested him and told him he has carpal tunnel. Plaintiff testified that it is not causing him much trouble and he has not received any treatment for carpal tunnel. Plaintiff testified that Dr. Schoedinger did not tell him that his carpal tunnel was work related. In fact, no doctor has tied Plaintiff's carpal tunnel injuries to his work at the railroad.

Dr. Schoedinger testified at his deposition that, when he saw Plaintiff on February 16, 2006, Plaintiff was complaining of neck pain and pain in his left arm and left shoulder. Dr. Schoedinger testified that, based upon his examination of Plaintiff, there was no evidence that he had any kind of accident or trauma to his neck. Dr. Schoedinger testified that Plaintiff did not state that he had ever had any kind of accident or injury at work involving his neck. Dr. Schoedinger testified that he reviewed an MRI of Plaintiff taken on December 8, 2005, which showed that Plaintiff had a disc rupture at C5-6. Dr. Schoedinger testified that he did not recommend surgery or prescribe any medication for Plaintiff. Dr. Schoedinger testified that he told Plaintiff that he needed to stop smoking and lose 150 to 170 pounds. Dr. Schoedinger testified that he had a telephone conversation with Plaintiff on February 24, 2006, and saw him again on April 3, 2006. Dr. Schoedinger testified that, at the time of that visit, Plaintiff had not stopped smoking and had not lost any weight.

Dr. Schoedinger testified that his opinion that Plaintiff's railroad work played a role in the development of the herniated disc in Plaintiff's neck was based upon "some work in the orthopedic literature." Dr. Schoedinger testified that "any activity that imposes repetitive stress that affects the

spine in multiple axis will cause degenerative changes to occur at an accelerated rate." Dr. Schoedinger acknowledged, however, that he has not observed the work of an engineer working for Defendant and could not say what component of Plaintiff's degeneration was related to work. Dr. Schoedinger was asked whether Plaintiff told him the type of work he did as an engineer and whether Plaintiff did over-the-road runs, yard runs or combination, and Dr. Schoedinger replied that he thought Plaintiff reported that he did "combination, primarily long." Dr. Schoedinger also acknowledged that he did not know what kind of locomotives Plaintiff operated or what kind of track he worked on. Dr. Schoedinger testified that he did not have any knowledge about Plaintiff's motorcycle riding or the forces involved on the vehicles Plaintiff operated, including his motorcycles.

Tyler Kress provided an expert report regarding Plaintiff's injuries. Kress's report stated that he is a Board Certified Industrial Ergonomist and has a B.S., M.S., and Ph.D. with major concentrations in Biomedical Engineering and Industrial Engineering. In his report, Kress stated that Plaintiff "suffers from overuse injuries to his neck and shoulders." Kress further stated that Plaintiff "has experienced years of wear-and-tear on his spine and there is clear evidence of joint degeneration and pains/problems after a number of years of railroad work that progressed over the years resulting in anatomical damage from exposure to ergonomic and biomechanical risk factors." Kress stated that Plaintiff "has been exposed to risk factors involving combinations of vibration, force, and postures." Kress stated that he has "observed/inspected much of this type of work on the railroad on several occasions and there are risk factors present that are associated with back/neck, and upper extremity musculoskeletal problems."

At his deposition, Kress testified that he spoke to Plaintiff over the telephone and reviewed

Plaintiff's deposition transcript and medical records. Kress testified that he did not do a site inspection and had not measured vibrations of any type of locomotive that was traveling over track that Plaintiff worked on. Kress testified that he could not say that he had inspected a specific locomotive that Plaintiff had actually been on. Kress testified that he did some measurements of locomotive vibration for an article he wrote about locomotive seats. Kress acknowledged that none of the measurements he did involved Defendant's locomotives. Kress also acknowledged that motorcycles cause vibration and that Plaintiff rode motorcycles a lot. Kress did not give an opinion that Plaintiff's carpal tunnel injuries were caused by his work for Defendant.[2]

## PROCEDURAL HISTORY

On July 9, 2008, Plaintiff filed his Complaint (#1) against Defendant. On October 23, 2008, Plaintiff filed a Four-Count Amended Complaint (#13). In Count I, Plaintiff sought damages pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51 et seq. He alleged that "since 1967, plaintiff was employed as a locomotive engineer for the defendant . . . at or near Decatur, Illinois." Plaintiff alleged that he "was furnished locomotives with inadequate and defective cab seats, rough track and oversized ballast and defective switches which subjected him to whole-body vibration and cumulative trauma causing him to be seriously and permanently injured." Plaintiff alleged that he suffered injuries to his neck, shoulders, arms and back. In Count II, Plaintiff alleged that Defendant was liable for "negligence per se" and alleged that "Defendant failed to keep and maintain those margins and/or areas alongside its tracks, where railroad

---

[2] Plaintiff has disputed this fact, arguing that Kress's report discussed "risk factors for the development of upper extremity injuries/disorders" and that "Plaintiff's carpal tunnel injuries are upper extremity injuries." This court concludes that a broad, general opinion regarding "upper extremity injuries/disorders" cannot be considered an opinion regarding the cause of Plaintiff's carpal tunnel injuries.

employees, including Plaintiff, are required to walk/work in the course of their duties, reasonably free from hazards which Defendant knew or which should have been known to exist, thereby constituting a violation of 49 C.F.R. 213." Count III alleged that Plaintiff's injuries were caused by violations of the Locomotive Inspection Act, 49 U.S.C. § 20701, over the course of Plaintiff's employment since 1967. In Count IV, Plaintiff alleged that he had been diagnosed with carpal tunnel syndrome which was caused by Defendant's negligence so that Defendant was liable under FELA.

On October 8, 2008, a Discovery Order (#11) was entered. The Discovery Order provided that the deadline for Plaintiff to disclose experts and provide expert reports was May 15, 2009. On June 18, 2009, Defendant filed a Motion for Partial Summary Judgment (#21). Defendant stated that, based upon Plaintiff's own sworn testimony, there was no support for any claim of injury to his shoulders, arms or back. On July 2, 2009, Plaintiff filed a Response (#22) and conceded Defendant's Motion for Partial Summary Judgment. Plaintiff stated that his claim under FELA only involved injuries to his cervical spine, bilateral wrists and bilateral hands. On July 6, 2009, this court entered an Order (#23) which granted Defendant's Motion (#21) and stated that Plaintiff's allegations of injuries to his shoulders, back and arms were stricken from the pleadings.

On November 13, 2009, Defendant filed a Motion to Bar Plaintiff's Treating Physicians from Giving Expert Causation Opinions and to Bar the Expert Opinions of Tyler Kress (#26) and a Memorandum in Support (#30) with attached exhibits. Defendant also filed a Motion for Summary Judgment (#28) and a Memorandum of Law in Support (#31), with attached documentation. Defendant's Motions are fully briefed and ready for ruling.

ANALYSIS

I.  MOTION TO BAR

In its Motion to Bar (#26) and Memorandum in Support (#30), Defendant argued that the causation opinions of Dr. Schoedinger and Tyler Kress should be barred because they do not meet the requirements of Rule 702 of the Federal Rules of Evidence or the standard set out in Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). Defendant also noted that Plaintiff had disclosed five other treating physicians as "non-retained experts" who may give causation opinions in this case, but Plaintiff testified at his deposition that only Dr. Schoedinger has told him that his alleged injuries had anything to do with work. Defendant further noted that this was only in regard to Plaintiff's neck, not carpal tunnel. Defendant argued that any expert opinions by Plaintiff's other treating physicians should be barred.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony in federal courts and establishes two general admissibility requirements for expert testimony: "(1) the expert must be qualified, and (2) the subject matter of the expert's testimony must consist of specialized knowledge that will be helpful or essential to the trier of fact in deciding the case." United States v. Lee, 502 F.3d 691, 698 (7th Cir. 2007). The proffered expert's opinion must be: (1) based upon sufficient facts or data; (2) the product of reliable procedures or methods; and (3) applied reliably to the facts of the case. Fed. R. Evid. 702. Treating physicians are not exempt from the requirements of Rule 702 because "we do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation." O'Conner v. Commonwealth Edison Co., 13 F.3d 1090, 1105 n.14 (7th Cir. 1994). The United States Supreme Court has emphasized that a district court must act as a gatekeeper in ensuring "that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert, 509 U.S. at 589. In assessing the reliability of an expert opinion, a court must consider factors such as "(1) whether the scientific theory can be or has been tested," "(2) whether the theory has been subjected

to peer review and publication," and "(3) whether the theory has been generally accepted in the scientific community." Ervin v. Johnson & Johnson, Inc., 492 F.3d 901, 904 (7th Cir. 2007); Meyers v. Nat'l R.R. Passenger Corp., 648 F. Supp. 2d 1032, 1042 (N.D. Ill. 2009). The Seventh Circuit has stated that the district court, in keeping with its gatekeeper's duty, must "assess the reliability of the *methodology* the expert has employed in arriving at his opinion." Fuesting v. Zimmer, Inc., 421 F.3d 528, 535 (7th Cir. 2005) (emphasis in original). "This requires the court to consider whether the testimony has been subjected to the scientific method, ruling out any subjective belief or unsupported speculation." Chapman v. Maytag Corp., 297 F.3d 682, 687 (7th Cir. 2002); see also Daubert, 509 U.S. at 590; Am. Honda Motor Co. v. Allen, ___ F.3d ___, 2010 WL 1332781, at *5 (7th Cir. 2010).

The expert must substantiate his opinion, and not simply provide the ultimate conclusion without analysis. See Clark v. Takata Corp., 192 F.3d 750, 757 (7th Cir. 1999). Either hands-on testing or review of experimental, statistical, or other scientific data gathered by others may suffice as a reasonable methodology for an opinion. Clark, 192 F.3d at 758. The court must "make certain that an expert, whether basing the testimony upon professional studies or personal experience employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 152 (1999). The party seeking the admission of an expert witness bears the burden of establishing that witness' admissibility. Lewis v. CITGO Petroleum Corp., 561 F.3d 698, 706 (7th Cir. 2009).

### A. DR. SCHOEDINGER

In this case, the testimony of Dr. Schoedinger demonstrated that any opinions regarding causation were not based upon testing or review of scientific data but were rather based upon assumption and speculation. Dr. Schoedinger did not know much of anything about Plaintiff's job

tasks and had no factual basis for concluding that Plaintiff's neck problems were caused by his work for Defendant. In fact, Dr. Schoedinger appeared to be misinformed about Plaintiff's work for Defendant because he testified that he believed Plaintiff did mostly combination, long runs, while Plaintiff testified he mainly did "locals." In addition, Defendant is correct that Dr. Schoedinger did not discuss Plaintiff's non-work activities with him in order to eliminate them as causes of his condition. This is extremely significant in this case because Plaintiff admitted that he first had neck pain after riding his motorcycle. Following this court's careful consideration of the documentation provided by Defendant and the relevant case law, this court agrees with Defendant that Dr. Schoedinger did not use a methodology sufficient to meet the reliability prong of the Daubert analysis. See, e.g., Myers v. Ill. Central R.R. Co., 679 F. Supp. 2d 903, 915 (C.D. Ill. 2010) (in FELA case, this court barred expert opinions by treating physicians, who had never been to any of the plaintiff's job sites nor observed the plaintiff's work, because they did not use a methodology sufficient to meet the reliability prong of the Daubert test); Meyers, 648 F. Supp. 2d at 1045-46 (in FELA case, court excluded proffered expert opinions by treating physicians noting that the plaintiff had offered no information to show the soundness of the methodology underlying the conclusions as to causation); Dukes v. Ill. Cent. R.R. Co., 934 F. Supp. 939, 951 (N.D. Ill. 1996) (in FELA case, court found treating physician's testimony inadmissible because he articulated no methodology or technique by which his conclusions could be scientifically tested or subject to peer review); Zarecki v. Nat'l R.R. Passenger Corp., 914 F. Supp. 1566, 1574-75 (N.D. Ill. 1996) (proposed expert testimony from treating physician on causation not based on any discernable scientific methodology and inadmissible); see also Sowell v. Burlington N. & Santa Fe Ry. Co., 2004 WL 2812090, at *5 (N.D. Ill. 2004) (court noted that treating physician did not reveal how he knew what was required of a railroad engineer or conductor, stating that "[k]nowledge of the duties of a railroad engineer or

conductor is not part of ordinary medical training"). This court therefore agrees with Defendant that Dr. Schoedinger cannot present admissible expert testimony on the issue of causation.

### B. OTHER TREATING PHYSICIANS

As far as Plaintiff's other treating physicians, Defendant argued that none of them have provided any opinion that Plaintiff's injuries were work-related and the discovery deadline in this case has passed. In his Response, Plaintiff conceded that Dr. Robert Kraus would not be rendering medical causation opinions in this case. Plaintiff argued, however, that depositions of the other treating physicians had been scheduled and it would be premature to determine the reliability of opinion testimony from the other treating physicians.

On February 3, 2010, Defendant filed a Motion for Leave to File its First Supplement to its Motion to Bar (#42). Defendant argued that two of Plaintiff's treating physicians, Dr. Michael Trice and Dr. Douglas Dove, were deposed since the filing of the Motion to Bar. Defendant stated that neither Dr. Trice nor Dr. Dove provided any opinion that Plaintiff's work activities were a medical cause of his alleged injuries. Plaintiff did not file a Response to Defendant's Motion for Leave to File (#42) and it is hereby GRANTED. This court will therefore consider Defendant's First Supplement to Defendant's Motion to Bar (#42-2).

In Defendant's First Supplement, Defendant argued that this court should bar any opinions from Dr. Dove and Dr. Trice. Defendant attached the deposition transcripts of Dr. Dove and Dr. Trice and argued that, in their depositions, Dr. Dove and Dr. Trice did not state an opinion that Plaintiff's medical conditions were caused by his work activities and established that they had no basis for any such opinion. This court agrees that the depositions of Dr. Dove and Dr. Trice establish that they cannot provide a causation opinion in this case.

This court notes that Plaintiff has not provided this court with any basis for concluding that

any of Plaintiff's treating physicians, other than Dr. Schoedinger, have an opinion that Plaintiff's injuries were caused by his work for Defendant. This court therefore agrees with Defendant that it is entitled to an order barring Plaintiff's treating physicians from presenting undisclosed opinions regarding causation.

## C. TYLER KRESS

Defendant argued that Tyler Kress's causation opinion should be barred because Kress does not have the required data to perform a reliable, replicable analysis as to causation. Defendant specifically noted that Kress did not do a site inspection specifically for this case, did not include numbers or actual measurements that could be tested or verified by anyone else, and could not recall if he had ever measured the locomotive vibration on any of Defendant's locomotives.

In his Response, Plaintiff argued that Kress is a "manifestly qualified liability expert." This court notes that Defendant has not contested Kress's qualifications, but has argued only that his opinions in this case are not reliable. Plaintiff also argued that Kress's "opinions pertaining to the known biomechanical, biomedical and ergonomic risk factors plaintiff was subjected to in performing his transportation employment duties throughout his lengthy railroad career, as well as defendant's failure to take adequate steps to minimize plaintiff's cumulative exposures to recognized risk factors for the development of musculoskeletal injuries, are reliable and will assist the jury in understanding both defendant's obligations to provide its employees with a reasonably safe place to work, and deciding whether or not defendant breached its duty owed to plaintiff during his employment with defendant."

The problem with Plaintiff's argument is that Kress's deposition showed that Kress had little or no knowledge regarding the actual "risk factors" Plaintiff was exposed to and, instead, based his report and testimony on generalized knowledge regarding the railroad industry and specific

11

knowledge about work sites where Plaintiff did not work. This court agrees with Defendant that Kress did not present any case-specific data, either from his own investigation or from the investigation of others.

In Myers, this court concluded that Kress could not provide an expert opinion in a FELA case involving Defendant. Myers, 679 F. Supp. 2d at 916. This court noted that Kress did not do an independent investigation into the plaintiff's work, had no evidence of the amount of pressure or repetition necessary to cause the injuries, did not quantitatively measure the plaintiff's exposure to the relevant risk factors in performing his job duties and did not apply the facts of the plaintiff's case to existing studies so that the opinion could be tested or peer reviewed. Myers, 679 F. Supp. 2d at 916. This court further noted that Kress developed opinions without citing or taking measurements of the forces imposed on the plaintiff when the plaintiff was performing the tasks at issue and altogether failed to provide evidence of the actual force levels at work in the plaintiff's work environment. Myers, 679 F. Supp. 2d at 916. The same is true here and this court concludes, as it did in Myers, that Kress's conclusions are based simply on his own speculation as to the details of Plaintiff's work, which is insufficient to establish that his views are supported by a scientifically reliable method. See Myers, 679 F. Supp. 2d at 916; see also Meyers, 648 F. Supp. 2d at 1043-44 (court concluded, in a FELA case, that the opinions of an ergonomic expert were not sufficiently reliable where the expert's opinions were not subjected to scientific method and consisted mainly of unsupported conclusions, noting that the expert failed to engage in the types of analyses recommended by the ergonomic literature such as quantification of the physical stress caused by the plaintiff's work functions); Stasior v. Nat'l R.R. Passenger Corp., 19 F. Supp. 2d 835, 852-53 (N.D. Ill. 1998) (proffered expert testimony by ergonomic experts on the issue of causation was not based on scientifically reliable methodologies, so not admissible in a FELA action).

D.  CONCLUSION

For all of the reasons stated, Defendant's Motion to Bar (#26) is GRANTED in its entirety.

II.  MOTION FOR SUMMARY JUDGMENT

A.  STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith, 475 U.S. 574, 586 (1986); Meyers, 648 F. Supp. 2d at 1037.  Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Meyers, 648 F. Supp. 2d at 1037.  In ruling on a motion for summary judgment, a district court must consider the record as a whole, in the light most favorable to the non-moving party, and draw all reasonable inferences that favor the nonmoving party.  Meyers, 648 F. Supp. 2d at 1037, citing Anderson, 477 U.S. at 255.

B.  CAUSATION

In its Motion for Summary Judgment (#28) and Memorandum of Law in Support (#31), Defendant noted that Counts I, II, and III of Plaintiff's Amended Complaint are in regard to Plaintiff's neck and Count IV alleged that Plaintiff's carpal tunnel syndrome was caused by Defendant's negligence.  Defendant argued that Plaintiff has not provided any evidence or expert testimony that his alleged carpal tunnel injuries were caused by his work.  Defendant further argued that Dr. Schoedinger's opinion and Tyler Kress's opinion regarding the cause of Plaintiff's neck

13

injury are not proper or sufficient.  Defendant argued that, without evidence of the element of causation, summary judgment in favor of Defendant is proper.

Plaintiff sued Defendant under FELA, which enables railroad employees to recover for injuries "resulting in whole or in part from the negligence" of the railroad or its agents." Campbell v. Nat'l R.R. Passenger Corp., 2008 WL 4367450, at *2 (N.D. Ill. 2008), quoting 45 U.S.C. § 51. For claims brought under FELA, "[t]he test . . . 'is simply whether the proofs justify with reason the conclusion that employer negligence *played any part, even the slightest*, in producing the injury . . . for which damages are sought.'" Fulk v. Ill. Cent. R. Co., 22 F.3d 120, 124 (7th Cir. 1994) (emphasis in original), quoting Rogers v. Mo. Pac. R. Co., 352 U.S. 500, 506 (1957); see also McBride v. CSX Transp., Inc., 598 F.3d 388, 406 (7th Cir. 2010).  Even though the language in FELA is broad, FELA is not a strict liability statute.  Doty v. Ill. Cent. R. Co., 162 F.3d 460, 463 (7th Cir. 1998).  Therefore, plaintiffs still must prove the traditional common law elements of negligence, including: (1) foreseeability; (2) duty; (3) breach; and (4) causation.  Williams v. Nat'l R.R. Passenger Corp., 161 F.3d 1058, 1062 (7th Cir. 1998); Fulk, 22 F.3d at 124; Campbell, 2008 WL 4367450, at *2.  "Critical to the FELA plaintiff's case is some evidence of a causal connection between the employer's negligence and the plaintiff's injury." Campbell, 2008 WL 4367450, at *3, citing Schmaltz v. Norfolk & W. Ry. Co., 896 F. Supp. 180, 182 (N.D. Ill. 1995).  "'[U]nless the connection is a kind that would be obvious to laymen, such as a broken leg from being struck by an automobile,' expert testimony is required to establish the causal connection between the railroad's negligence and the injury at issue." Campbell, 2008 WL 4367450, at *3, quoting Schmaltz, 896 F. Supp. at 182.  This court concludes that this is true even though, under FELA, a plaintiff only has to show that employer negligence played a part, even a slight part, in producing the injury.  See McBride, 598 F.3d at 406.  There must be some evidence from which a jury could find that

employer negligence was a cause of the injury.

In this case, this court agrees that Plaintiff has proffered no evidence that his carpal tunnel syndrome was caused by his work for Defendant. In addition, this court has ruled that Plaintiff's proffered expert testimony on the issue of the causation of his neck injury is inadmissible. This court further concludes that the causal connection between Defendant's purported negligence and Plaintiff's alleged carpal tunnel and neck injury are less than clear to a layman. See Campbell, 2008 WL 4367450, at *3. This is especially true in this case where Plaintiff testified that he first experienced neck pain in July 2002 from riding his motorcycle and also testified that he experienced numbness and tingling in his fingers from riding a motorcycle and did not experience tingling at any other time. Therefore, because Plaintiff has failed to produce any admissible evidence to support a necessary element of his FELA claims, summary judgment is warranted. See Doty, 162 F.3d at 462-63; Myers, 679 F. Supp. 2d at 917; Meyers, 648 F. Supp. 2d at 1046; Campbell, 2008 WL 4367450, at *4; Stasior, 19 F. Supp. 2d at 853; Zarecki, 914 F. Supp. at 1575; Schmaltz, 896 F. Supp. at 183.

## C. OTHER REASONS FOR SUMMARY JUDGMENT

Defendant has also argued that it is entitled to summary judgment as to Plaintiff's claims regarding ballast size because these claims are precluded by the Federal Railroad Safety Act, 49 U.S.C. § 20101 et seq. and regulations promulgated thereunder. Plaintiff conceded that his cumulative trauma injuries are not related to walking and working on large ballast and debris. Plaintiff asked that this court find that Defendant's request for summary judgment on this issue is moot. Defendant argued as well that it is entitled to summary judgment as to Plaintiff's allegations regarding locomotive seat design because these allegations are precluded by the Locomotive Inspection Act, 49 U.S.C. 20701 and regulations promulgated thereunder. Plaintiff has opposed this

argument and contends that Defendant is not entitled to summary judgment on this basis.

This court has already concluded, however, that Defendant is entitled to summary judgment in this case. This court therefore does not need to address Defendant's additional arguments.

### III.  REMAINING MOTIONS

### A.  PLAINTIFF'S MOTION TO SUPPLEMENT

On February 3, 2010, Plaintiff filed a Motion for Leave to File His First Supplement to Plaintiff's Response to Defendant's Motion to Bar (#43). Plaintiff stated that United States District Judge Michael M. Mihm had issued orders in a similar case, Orin Kelly v. Illinois Central Railroad Company, Case No. 08-0152. Plaintiff stated that, in the Kelly case, Judge Mihm allowed Tyler Kress to testify and allowed Dr. Schoedinger to testify regarding general causation. Plaintiff stated that Judge Mihm also allowed the plaintiff to make an offer of proof so as to allow him to reconsider his ruling that Dr. Schoedinger was not allowed to testify as to specific causation. Plaintiff stated that he would offer the affidavit of Dr. Schoedinger as a supplement to Plaintiff's Response to Defendant's Motion to Bar. Plaintiff attached the lengthy affidavit of Dr. Schoedinger, dated January 1, 2010.

On February 10, 2010, Defendant filed its Response in Opposition to Plaintiff's Motion for Leave to File His First Supplement to His Response to Defendant's Motion to Bar (#44). Defendant argued that Plaintiff's Motion should be denied. Defendant argued that Judge Mihm's decision in the Kelly case should not be blindly followed here. Defendant noted that Judge Mihm refused to consider this court's decision in the Myers case, stating that "[e]ach case must be resolved on the particular facts of that case, which may result in opposing conclusions being reached by the presiding judges." Defendant also argued that the new affidavit of Dr. Schoedinger is inadmissible because it is not timely, because it provides new facts and other bases for the doctor's opinions

which were not disclosed in his medical reports or in his deposition, because many of the new facts included in the affidavit are contrary to Dr. Schoedinger's sworn deposition testimony, and because, in the affidavit, Dr. Schoedinger purports to base his opinions on anecdotal evidence acquired from years of treatment of similar patients which is an improper basis for an expert medical causation opinion. This court agrees with Defendant's arguments.

This court first agrees with Judge Mihm that each case must be resolved on the particular facts of that case. Therefore, Judge Mihm's ruling in the Kelly case does not affect this court's ruling based upon the unique facts of this case and the applicable case law. This court also agrees with Defendant that Dr. Schoedinger's affidavit cannot be considered by this court. This court agrees that the affidavit is not timely. All discovery in this case, including depositions of experts, was to be completed by October 15, 2009. Dr. Schoedinger's deposition was taken on September 23, 2009. This court therefore agrees that Dr. Schoedinger has been deposed on his opinions in this matter, discovery has closed, and Plaintiff cannot add new opinions at this late date. This court also agrees that Dr. Schoedinger's affidavit contains new facts and bases for his opinions, many of which are contrary to his sworn deposition testimony. This court has recently stated that affidavits "when offered to contradict the affiant's deposition are so lacking in credibility as to be entitled to zero weight in summary judgment proceedings unless the affiant gives a plausible explanation for the discrepancy." Nuzzi v. St. George Cmty. Consol. Sch. Dist. No. 258, ___ F. Supp. 2d ___, 2010 WL 675033, at *14 (C.D. Ill. 2010), quoting Beckel v. Wal-Mart Assocs., Inc., 301 F.3d 621, 623 (7th Cir. 2002). Dr. Schoedinger's partial explanation for his lack of knowledge at his deposition was that he did not have an "opportunity" to review Plaintiff's deposition transcript prior to his deposition. Dr. Schoedinger provided no explanation for his limited knowledge regarding Plaintiff's work duties and pertinent epidemiology studies at his deposition and the extensive knowledge of

these matters he claimed to have in his affidavit. This court concludes that Dr. Schoedinger's affidavit can only be considered a belated attempt to bolster an unsupported opinion. This court simply does not allow a party to present an unprepared expert for deposition and then attempt to provide a basis for the expert's opinion in a later affidavit, provided after the discovery deadline had passed.

This court additionally notes that it agrees with Defendant that Dr. Schoedinger based much of the opinion expressed in his affidavit on his many years of treating railroad employees with similar conditions. This court agrees that this is not a proper basis for expert medical causation testimony because Dr. Schoedinger failed to make any scientific determination as to why those conditions developed in Plaintiff or any other railroad worker considering that he also stated that he has seen "thousands" of other patients who developed the same conditions without ever having worked for a railroad. See, e.g., Rains v. PPG Indus., 361 F. Supp. 2d 829, 833-34 (S.D. Ill. 2004) (50 years experience treating patients not enough to provide basis for causation testimony); Grant v. Chemrex, Inc., 1997 WL 223071, at *10 (N.D. Ill. 1997) (subjective observations based upon treating the plaintiff not a sufficient foundation for expert opinion).

For all of the reasons stated, Plaintiff's Motion for Leave to File His First Supplement to Plaintiff's Response to Defendant's Motion to Bar (#43) is DENIED.

.                   B. DEFENDANT'S MOTION IN LIMINE

Because this court has concluded that Defendant is entitled to judgment as a matter of law on Plaintiff's Amended Complaint, Defendant's Motion in Limine (#48) is MOOT.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Bar Plaintiff's Treating Physicians from Giving Expert Causation Opinions and to Bar the Expert Opinions of Tyler Kress (#26) is GRANTED.

(2)  Defendant's Motion for Leave to Supplement Motion to Bar (#42) is GRANTED.

(3) Defendant's Motion for Summary Judgment (#28) is GRANTED.

(4) Plaintiff's Motion for Leave to File Supplement to Plaintiff's Response (#43) is DENIED.

(5) Based upon these rulings, Defendant's Motion in Limine (#48) is MOOT.

(6) This case is terminated.  The status conference scheduled for May 27, 2010, at 3:30 p.m. is hereby VACATED.

ENTERED this 12th day of May, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE